EVEY v. MEXICAN CENT. RY. CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1897.)

No. 544.

1. CONFLICT OF LAWS—ACTION IN FEDERAL COURT FOR INJURIES IN ANOTHER COUNTRY—MASTER AND SERVANT.

The right of an employé of a railroad company, injured in the republic of Mexico by the negligence of the company, to recover in a civil action damages for such injury under the law of that republic, may be enforced in a federal court of the state of Texas having jurisdiction of the parties and of the subject-matter; that law being neither so vague and uncertain, nor so dissimilar to the law of the state of Texas, as to prevent it from being so enforced, and both parties being citizens of the United States.

2. SAME—DISSIMILARITY IN LAW.

A dissimilarity between the law of another country and the law of a state, in the federal court of which it is sought to be enforced, will not prevent such enforcement, unless the dissimilarity is so great as to conflict with the settled public policy of that state.

3. SAME—RIGHT TO SUE WHERE INJURY OCCURRED.

The fact that a person injured by the negligence of a railroad company in another country might sue in that country is not sufficient to prevent him from suing in a United States court, particularly where the company owns and operates part of the same line of railroad in the state in which the suit is brought.

4. SAME—RES JUDICATA—SECOND SUIT FOR ADDITIONAL DAMAGES.

The provision of the Penal Code of Mexico (article 306) that the required condition that the damages and injuries shall be actual "shall not prevent that the indemnization of subsequent damages and injuries be exacted by a new suit when they shall have accrued," has reference only to damages for injuries that develop after the first suit.

5. SAME—MATTERS PERTAINING TO REMEDY.

The fact that the law of another country provides for the recovery in a second suit of damages for injuries which develop after the first suit does not prevent the person injured from suing in a court of this country, in which all damages must be recovered in one suit, as that provision of the foreign law relates merely to the remedy, and cannot govern here.

6. SAME—MATTERS OF PROCEDURE

The provision of the Penal Code of Mexico (article 313) that the judges "shall endeavor that the amount and terms of payment be fixed by agree-

ment of the parties" relates merely to procedure, and not even to the remedy, and therefore does not control in an action in a United States court arising under the law of Mexico.

7. SAME—CRIMINAL LIABILITY.

The fact that acts of negligence for which the laws of Mexico give a civil remedy constitute also a crime under the laws of that country does not prevent the person injured from maintaining a civil suit therefor in a United States court, the liability not depending on the criminal prosecution or conviction of the defendant.

8. SAME—PROVISIONS CONTRARY TO POLICY OF OUR LAW.

The fact that the provision of the Penal Code of Mexico (article 323) that the judge may award, as "extraordinary indemnity," any sum that he may determine, considering the "social position" of the person injured, is against the policy of our law, is no obstacle to a suit in a United States court to enforce a right given by the law of Mexico, there being no prayer for such extraordinary indemnity.

9. SAME—WANT OF PRECEDENTS IN FOREIGN COUNTRY.

The fact that the Mexican courts are not governed by precedent, and have no reports of adjudicated cases, is not an obstacle to an action in a United States court to enforce a right given by the laws of Mexico.

10. FEDERAL COURTS—DECISIONS OF STATE COURT.

The decisions of a state court that a law of another country is opposed to the policy of the state, and cannot be enforced there, are not controlling in the federal courts, the question of international comity being controlled by international law and custom.

In Error to the Circuit Court of the United States for the Western District of Texas.

Action by Edward Evey against the Mexican Central Railway Company, Limited, to recover damages for personal injuries. Petition dismissed on special exceptions, and plaintiff brings this writ of error.

To make an intelligent statement of this case, it is necessary to give the plaintiff's first amended original petition and the defendant's special exceptions thereto in full, as follows:

Now comes the plaintiff, Edward Evey, and, by leave of court first obtained, files this, his first amended original petition, in lieu of his original petition heretofore filed, and alleges that the plaintiff, Edward Evey, is a citizen of, and resides in, El Paso county, Texas, and that the defendant is a railway corporation duly incorporated under the laws of, and a citizen of, the state of Massachusetts, doing business in El Paso county, Texas, and has, and at all times hereinafter mentioned has had and maintained, an office and agent in El Paso county, Texas; that the said defendant, the Mexican Central Railway Company, Limited, owns and operates, and at all times hereinafter mentioned has owned and operated, a line of railway from the City of Mexico, in the republic of Mexico, to and into El Paso county, Texas, carrying on and conducting the ordinary business of a railway company, as a common carrier of goods and passengers for hire; that on the 12th day of July, 1895, and for a long time next prior thereto, plaintiff was an employé of said defendant, engaged in the employment of said defendant company as a locomotive engineer, and was engaged in the running of an engine to and fro over its railway for defendant upon the division known and commonly called the "Mexico Division," and which comprises that portion or section of defendant's railroad from the City of Mexico north to Danue station, in the republic of Mexico. And plaintiff says that on said 12th day of July, 1895, and while so engaged in the service of said defendant, and in the discharge of his duties incident to said employment, and while running said engine under the direction of said defendant company, he was, by and through the negligence of said defendant company, its section boss, agents, and servants, seriously and permanently injured, without any fault or contributory negligence on his part. And he says that on the said 12th day of July, 1895, he was engaged, as an engineer, in running for defendant, and under its orders and directions, an engine known

in railroad parlance as a "helper engine," which said engine was then and there under the direction and in the charge of one Phil J. Martin, as conductor thereof; that on said 12th day of July, 1895, plaintiff, under the direction of said defendant and its said conductor aforesaid, had assisted a freight train, with said helper engine, from Tula station to Danue station, on said defendant's railroad; that plaintiff arrived at said last-named station, on the said helper engine, at about 7 o'clock p. m. on said 12th day of July, 1895; that, upon his arrival at said Danue station, plaintiff was ordered to return to said Tula station by defendant and its agents and its said conductor, Phil J. Martin; that in obedience to the orders of defendant and its agents and said conductor, who was then and there present, and in charge of, and controlling the operation of, said engine, plaintiff started to return from said Danue station to said station of Tula, and that while he was so returning the engine upon which plaintiff was as aforesaid was derailed and wrecked by and through the negligence of said defendant company, its section master, agents, and servants, in this: that said railway track was obstructed by a push car, said push car being then and there on said railway track, and being then and there in such a position as to obstruct said railway track, by and through the negligence of defendant, its section master, agents, servants, and employés; that plaintiff did not know, and had no means of knowing, that the railroad of defendant was unsafe or so obstructed, and was not informed thereof by defendant, or defendant's said section master, agents, or employés, and said push car was not seen by the plaintiff in time for him to stop said engine and protect himself against injury, for the reason that said defendant, its officers, section boss, and agents, negligently failed to provide the said push car with a light, and negligently failed to have a man or some person in front of said push car with a signal light to give warning to the plaintiff and others who might be upon said helper engine. And the said defendant, its officers, section boss, agents, and employés, negligently allowed said push car to be out upon said railroad track after dark (it being already dark when the accident aforesaid happened), and the said defendant, its section boss, agents, and employés, negligently failed to inform plaintiff that said track was so obstructed, or that said push car was upon that section of said railroad where plaintiff was operating said engine as aforesaid, although said defendant then and there owed plaintiff the duty to keep said railroad track clear and free of all obstructions. And through such negligence upon the part of said defendant, its section boss, agents, and employés, plaintiff was injured as hereinbefore and hereinafter stated. Plaintiff alleges that, when said push car was struck by said engine, said engine was derailed and wrecked, and plaintiff was thrown from said engine and sustained serious and permanent injuries, to wit, his left foot was badly crushed and broken, three of plaintiff's ribs were crushed and broken, and plaintiff was greatly bruised, wounded, and permanently injured in his back, shoulders, heart, and spine, and by reason of such injuries plaintiff became insensible, and remained insensible for a long space of time, to wit, for the space of two hours, and after he regained consciousness he suffered intense pain and agony for the space of twenty-four hours; that after so receiving said injuries he was, by reason of the negligence of said defendant and its agents, forced to lie in the rain, upon the ground, and without shelter, for the space of nearly five hours, without any effort or attempt upon the part of defendant, its agents or servants, or any or either of them, to administer to him, or to in any way or manner alleviate plaintiff's great suffering. Plaintiff states that the injuries so received by him were occasioned solely by the negligence of the defendant, its section boss, agents, and employés, in not maintaining its roadway in a safe and secure condition for the passage of said engine over the same, and in negligently allowing said push car to be on said track at the time of said accident, and in negligently allowing the same to be on said track without supplying same with a proper and sufficient light, and in negligently allowing said push car to be operated upon the same without having a man with a signal light at a safe distance in advance of the same, or on plaintiff's side of the same, to warn plaintiff of danger, and to notify plaintiff that there was danger, and that the push car was upon that section of track, and in front of him. And plaintiff says that had not defendant, its section boss, agents, and employés, been so negligent in those respects, he would not have

been injured. Plaintiff states that said injuries so received by him through the negligence of defendant as aforesaid are serious and permanent as aforesaid, and have rendered plaintiff a cripple and invalid for life, and by reason of said injuries plaintiff has ever since said 12th day of July, 1895, suffered great mental and physical pain, and now suffers, and will throughout the remainder of his life continue to suffer, such pain, and that by reason of said injuries plaintiff was forced to lie in a hospital in the republic of Mexico for the space of two months, and for seven months afterwards plaintiff was unable to do any work or follow any employment. Plaintiff says that before said injury he was a sound, able-bodied, and vigorous man, but by reason of said injuries plaintiff's heart is permanently and dangerously affected, his nervous system shattered and permanently injured, and plaintiff's capacity to earn a living as a locomotive engineer has been destroyed, and his capacity to earn a living by any sort of means or employment has been seriously and permanently impaired; that at the time of and before said injuries the plaintiff was earning the sum of one hundred and twenty dollars per month in money of the United States of America, or its equivalent in money of the republic of Mexico, and that, by reason of his experience as a railroad engineer, he would have been able to earn at least that amount afterwards; that in consequence of said injuries it will be impossible for said plaintiff in the future to secure any kind of permanent employment, and that, even if he succeeds in securing any kind of employment, he will not be able to make and earn more than thirty dollars per month; that, at the time of said accident, plaintiff was 34 years of age.

Plaintiff further alleges that by the laws of Mexico, which now exist, and which existed and were in force at the time and place of the happening of said injuries, through defendant's negligence as aforesaid he (plaintiff) has and had a right of action against defendant for his damages, and he says that the following were the laws of Mexico, and are now the laws of Mexico, applicable in this case, out of which his said right of action grew, and by virtue of which the same now exists in said republic of Mexico, viz.:

From the federal constitution of the Mexican United States:

"Art. 72. Congress has power: * * * (22) To enact laws governing the general lines of communication, and governing post-offices and mails."

"Art. 97. The federal courts have jurisdiction: (1) Of all questions growing out of the execution and application of the federal laws, except when the application of the law only affects interests of individuals, in which case the local judges and tribunals of the state shall entertain jurisdiction."

From the Federal Penal Code of Mexico:

"Art. 4. A crime is the voluntary infraction of a penal law, doing that which it prohibits, or neglecting to do that which it commands.

"Art. 5. A misdemeanor is the infraction of police regulations or proclamations and good government.

"Art. 6. There are intentional crimes, and crimes resulting from neglect."

"Art. 11. Negligent crimes exist: (1) Where an act is done, or a duty omitted, which, although lawful in itself, is not so by reason of its consequences, if the accused fails to provide against such consequences, through negligence, want of reflection or care, by not making proper investigations, by not taking necessary precautions, or through unskillfulness in any art or science. the knowledge of which is necessary in order that the act done may not result in injury. Unskillfulness is not punishable when he who does the act does not profess the art or science necessary to be known, and acts when impelled by the gravity and urgency of the case. * * * (3) Where the question relates to an act which is punishable solely by reason of the circumstances under which it is done, or by reason of a circumstance personal to the party aggrieved: If the accused is ignorant of such circumstances, through not having previously made the investigation which the duty of his profession or the importance of his case demands."

Pen. Code, bk. 2, "Civil Liability in Criminal Matters":

"Art. 301. The civil liability arising from an act or omission contrary to a penal law consists in the obligation imposed on the party liable, to make (1) restitution, (2) reparation, (3) indemnization, and (4) payment of judicial expenses."

"Art. 304. Reparation comprehends: The payment of all the damages caused to the injured party, to his family or to a third person, for the violation of a right which is formal, existing and not simply possible, if such damages are actual, and arise directly and immediately from the act or omission complained of, or there be a certainty that such act or omission must necessarily cause, as a proximate and inevitable consequence.

"Art. 305. Indemnization imports: The payment of damages, that is, of that which the injured party fails to enjoy as a direct and immediate consequence of an act of omission by which a formal, existing and not merely possible right is attacked, and of the value of the fruits of the thing usurped and already consumed, in the cases in which the same should be done conformably with civil right.

"Art. 306. The condition required by the two preceding articles, that the damages and injuries should be actual, shall not prevent that the indemnization of subsequent damages and injuries be exacted by a new suit, when they shall have accrued: If they proceed directly from, and as a necessary consequence of, the same act or omission from which resulted the previous damages or injuries.

"Art. 307. The payment of judicial expenses solely embraces those absolutely necessary, which the injured party incurs for the purpose of investigating the act or omission which causes the criminal proceeding and to avail himself of his rights in such proceeding or in the civil suit.

"Art. 308. The civil responsibility cannot be declared except at the instance of the party entitled to recover.

"Art. 309. The judges who adjudicated upon the civil responsibility shall be controlled by the provisions of this title, in so far as its provisions extend; on other questions, they shall follow, according to the nature of the suit, the provisions of the civil or of the commercial laws which may be in effect at the time of the happening of the act or omission causing the civil responsibility.

"Art. 310. The right to civil responsibility forms part of the estate of a decedent and descends to his heirs and successors; provided, it be not the case of the following article, or that it arise from injury or defamation, and that, the offended person having been able in his lifetime to bring his suit, he neither did so nor directed his heirs to sue; in such case the offense shall be understood as remitted.

"Art. 311. The action to enforce civil responsibility demanding support of a person guilty of homicide is personal, and belongs exclusively to the persons named in the end of article 315, as directly damaged. Consequently such action forms no part of the estate of the deceased, nor is it extinguished, although the latter pardon the offense in life."

"Art. 313. The judges who take cognizance of suits based upon civil responsibility shall endeavor that the amount and terms of payment be fixed by agreement of the parties. Failing in this, the provisions of the following articles shall be observed: * * *

"Art. 321. In case of blows or wounds, from which the injured party does not remain crippled, lamed or deformed, he shall have the right that the responsible party pay all his expenses of cure, the damages he may have suffered, and that which he may fail to gain during the time which, in the opinion of competent persons, he may not be able to do the work by which he subsisted. But it is essential that the inability to work should be the direct result of the wounds or blows, or be a cause which is the immediate effect of such blows or wounds.

"Art. 322. If the inability of the injured party to devote himself to his accustomed work be permanent, from the moment in which he shall recover and can properly devote himself to other and different work, which may be lucrative and appropriate to his education, habits, social position and physical constitution, the civil responsibility shall be reduced to, paying him the sum which his ability to earn in his new employment falls short of his daily earnings in his former occupation.

"Art. 323. If the blows or wounds cause the loss of any member not indispensable for work, or the person wounded or struck remain otherwise, crippled, lamed or deformed, by that circumstance, he shall have the right not only to the damages and injuries, but also to the sum which the judge may determine

as extraordinary indemnity, considering the social position and sex of the person and the part of the body remaining crippled, lamed or deformed.

"Art. 324. The gain which the injured party fails to earn during his inability to work shall be computed by multiplying the sum which he formerly earned per day by the number of days of his disability.

"Art. 325. The provisions of the foregoing articles for computing the civil responsibility for wounds or blows shall be applied to all other cases where, in the violation of a penal law, a person may cause the illness of another, or may have placed him under disability to work.

"Art. 326. No person can be charged with civil liability upon an act or omission contrary to a penal law unless it be proven: That the party sought to be charged usurped the property of another; that without right he caused, by himself or by means of another, damages or injuries to the plaintiff; or that, the party sought to be charged being able to avoid the damages, they were caused by a person under his authority.

"Art. 327. Whenever any of the conditions of the preceding articles are established, the defendant shall be civilly liable, without regard to whether he be absolved or condemned to criminal liability."

"Art. 330. In order that masters may be held civilly liable through their clerks and servants, according to the provisions of articles 326 and 327, it is an indispensable condition that the act or omissions of the clerks or servants causing the liability shall occur in the service for which they were employed.

"Art. 331. Under the condition of the preceding article, those liable are. * * * railroad companies."

"Art. 363. Limitation: The various actions by which the civil responsibility may be demanded, or the execution of a final judgment declaring that such responsibility has been incurred by the accused may be asked, shall be extinguished according to the terms and in the manner provided by the Civil Code or the Commercial Code, according to the nature of the demand and the subject-matter treated of.

"Art. 364. Amnesty shall not extinguish the civil responsibility, nor the actions to exact it, nor the legal rights which third persons may have acquired. Nevertheless, when the responsibility may not yet have been made effective, and the demand is not for restitution, but for reparation of damages, of indemnity for injuries, or for payment of judicial expenses, the guilty person shall remain free from such obligations only when it is so declared in the amnesty and they are expressly left to the charge of the public treasury.

"Art. 365. A pardon shall in no case extinguish the civil responsibility, nor the actions to enforce it, nor the legal rights which third persons may have acquired.

"Art. 366. Limitation is interrupted by the criminal proceeding until final judgment is pronounced. This done, the term of limitation commences to run anew."

Transitory Law, Pen. Code:

"Art. 26. Until it is determined in the new Code of Procedure what judges shall have jurisdiction and the mode of proceeding, in suits to enforce civil liability, the following rules shall be observed: * * * (5) Actions to enforce the civil liability may be brought before a court of civil jurisdiction, whether or not the criminal proceeding has been commenced; but while the latter is pending the proceedings in the former shall be stayed."

From the Federal Civil Code:

"Art. 9. Against the observance of the law, disuse, custom or practice to the contrary cannot be alleged."

"Art. 20. When a judicial controversy can be decided neither by the text nor by the natural meaning or spirit of the law, it must be decided according to the general principles of right, taking into consideration all the circumstances of the case.

"Art. 21. In case of conflict of rights and the absence of express law for the especial case, the controversy shall be decided in favor of him who seeks to avoid damages, and not in favor of him who seeks to obtain profit. If the conflict should be between equal rights, or rights of the same species, it shall be decided observing the greatest equality possible between the parties."

"Art. 1095. Limitation bars in three years: * * * (8) Civil responsibility

for injuries, whether done by word or by writing, and that which arises from damage caused by persons or animals, and which the law imposes upon the representatives of such persons or the owners of the animals."

Act of congress of December 15, 1881:

"Article 1. The executive shall regulate the service of railroads, telegraphs and telephones constructed, or which in the future may be constructed, upon Mexican territory, according to the following bases: (1) Railroads, telegraphs and telephones which in the federal district and territory of Lower California unite together two or more municipalities, or the federal district and territory of Lower California with one or more states; those which communicate two or more states with each other; those which touch at any point in the territorial boundary line of the republic and foreign countries, or run parallel therewith within a region of twenty leagues, are known as general lines of communication within the meaning of fraction 22 of article 72 of the constitution. (2) These general lines of communication and their branches shall be subject exclusively to the federal legislature, executive and judicial powers, in their respective spheres, in all cases where any of the following matters are involved: * * * (g) Construction and repair of the works. Crimes committed against the security or integrity of the works or against the operations of the lines. (h) Security of the same works for which the companies are obligated, and crimes or misdemeanors of the companies through delays or obstruction, carelessness or fault in the service, and for accidents or mishaps in the operation."

From the regulations for the construction, maintenance, and operation of railroads:

"Art. 52. The coaches and cars which enter into the make-up of a train shall have the drawheads of the same height, so that their centers will be opposite to each other.

"Art. 53. The conductor of a train en route is the person in command of all the train crew, including the engineer and fireman."

"Art. 121. Engineers shall communicate by means of a steam whistle with the agents charged with the duty of watching, and with the conductors of trains, using the following signal: * * * Three blasts or sounds of the whistle shall be the signal that the entire train is going to move backward."

"Art. 124. Companies [railroad] are liable for accidents which occur through the failure to observe the provisions of this chapter [chapter 7] respecting signals, and for employing people who do not have certificates showing that their sight and hearing are free from infirmity which does not permit them to recognize the signals."

"Art. 194. Companies [railway] are liable for all faults or accidents which occur through tardiness, negligence, imprudence or want of capacity of their employés."

"Art. 298. All violations of this law, which companies [railway] commit shall be subject to punishment by the administration by fine up to five hundred dollars, which the department of public works shall assess reserving always the right of individuals, through indemnity, and the liability which the companies may have incurred through criminal acts or omissions committed by them."

Plaintiff further alleges that by virtue of the general principles of right and justice, and by virtue of the laws of Mexico hereinbefore set forth, he had at the time of the occurrence of the accident hereinbefore mentioned, and now has, a right of action for his damages against the defendant in the republic of Mexico, and the same now exists in said country as well as in the United States of America. And he says that the acts of negligence upon the part of the defendant, its section master, agents, and employés, complained of, were wrongful and actionable, as has been hereinbefore shown by the plaintiff, in the republic of Mexico, at the time of the accident complained of, and are now so, and he says the same were then and are now wrongful and actionable in the United States of America and in the state of Texas. And plaintiff says that by reason of said injuries received by him he has suffered and sustained damages in the sum of fifteen thousand dollars, for which he sues. And, the defendant being in court, plaintiff prays that he have judgment for his damages aforesaid, costs of suit, and he prays for general relief.

## The special exceptions are:

(1) And, for further special exception to said petition, defendant, by its attorneys, comes and says: That it excepts to said petition because the laws of the republic of Mexico, as pleaded by the plaintiff, are so vague, uncertain, and dissimilar to the laws of this country that this court should not entertain jurisdiction herein and attempt to enforce said laws. That said laws have been passed upon by a decision of the supreme court of the state of Texas, to wit, in the case of Railway Co. v. Jackson, 33 S. W. 857; it being therein held that the courts of this state would not sit to adjudicate controversies like the one at bar, under the laws of the said republic of Mexico, on account of their dissimilarity to our laws, and that the policy of this state and courts of this country would be not to interfere with the traffic of railroads having their lines in Mexico by adjudicating causes arising in Mexico.    (2) That said petition shows that the injury sustained by plaintiff occurred in the republic of Mexico, and any right of action he may have would be controlled by the laws of said republic, and it appears that said defendant has ever since said injury maintained its line of railroad in said republic, and continued to possess its property in said republic, and there is no reason shown in said petition why plaintiff did not sue for damages for said injuries in said republic, where the injury occurred, instead of bringing his suit in this court.    (3) That it appears from the laws of Mexico, as set out in plaintiff's petition, that, if plaintiff has any cause of action, it would be controlled by the laws of the republic of Mexico.    That according to said laws, as set out in plaintiff's petition, that suit and adjudication of the rights of plaintiff and the awarding of damages to the plaintiff for the injuries sustained would not be a final determination of the rights between the parties, but that plaintiff, according to said law, would have the right to bring suits from time to time, and recover in said suits, if said injury is continuing or permanent.    That said law is contrary to public policy.    (4) That, according to article 313 of the laws of said republic, the judge who takes cognizance of suits based upon civil responsibility shall endeavor to effect compromise, so that the amounts and terms of payment be fixed by agreement of the parties.    That said petition fails to show that the judge of this court, or any judge having cognizance of said matter, had endeavored to have the amount and terms of the payment for such injuries agreed upon between the parties.    (5) That according to the laws of said republic, as set out in said petition, said plaintiff would have no right in a civil suit to recover damages for his said injuries unless he shows that the acts of defendant which caused the injury constituted a crime under said laws of Mexico.    That the recovery in such civil suit is penal in its nature.    That this court cannot enforce the penal laws of the republic of Mexico.    That said laws so pleaded do not sufficiently define what acts are made penal under said laws to enable this court to judge whether or not said acts by which such injury was caused are penal, within the meaning of said law, to entitle plaintiff to any recovery in a civil action therefor.    (6) That, according to article 323 of the laws of said republic of Mexico, a recovery may be had not only for the damages sustained by the injury complained of, but the judge trying the case may award, as extraordinary indemnity, any sum that he may determine, considering the social position, etc., of the party injured.    That said law is against natural justice and the policy of our law, to discriminate in favor or against a litigant according to his social position.    (7) That the laws of the republic of Mexico, by which plaintiff's cause of action will have to be tried, are so vague and indefinite that this court cannot properly and intelligently determine and administer the same.    Wherefore defendant prays judgment of the court, etc.

The circuit court, on argument, sustained the said special exceptions, and, the plaintiff declining to amend, dismissed the action, to which the plaintiff excepted, and now prosecutes this writ of error.

Millard Patterson and W. B. Brack, for plaintiff in error.

T. A. Falvey, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above), delivered the opinion of the court.

As the plaintiff is a citizen of the state of Texas, residing in the Western district of said state, and the defendant a citizen of the state of Massachusetts, the circuit court has jurisdiction ratione personæ. As the cause of action shown by the petition is one for a personal tort (i. e. for injury to the person through negligence), it is transitory, and the circuit court has jurisdiction ratione materiæ.

While the negligence complained of was committed in the republic of Mexico, neither of the parties is a citizen of Mexico, but both are citizens of the United States; and therefore there ought to be no question of international comity in the case, further than to inquire whether the laws of Mexico give a right to the plaintiff to recover damages for such negligence, and the extent of such right. The laws of the republic of Mexico create a civil liability in favor of a person injured by negligence, and give a distinct civil remedy therefor, in the nature of pecuniary damages. To the same effect is the law of the state of Texas. This action is not barred by any statute of the United States, of the state of Texas, or of the republic of Mexico. "A right arising under, or a liability imposed by, either the common law or the statute of a state may, where the action is transitory, be asserted and enforced in any circuit court of the United States having jurisdiction of the subject-matter and the parties." Dennick v. Railroad Co., 103 U. S. 11. Whether a law is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon whether its purpose is to punish offenses against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. Huntington v. Attrill, 146 U. S. 657, 673. 13 Sup. Ct. 224. "The test is not by what name the statute is called by the legislature or the courts of the state in which it was passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character and effect, a punishment of an offense against the public, or a grant of a civil right to a private person. In this country the question of international law must be determined in the first instance by the court, state or national, in which the suit is brought. If the suit is brought in a circuit court of the United States, it is one of those questions of general jurisprudence which that court must decide for itself, uncontrolled by local decisions. Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10; Railway Co. v. Cox, 145 U. S. 593, 605, 12 Sup. Ct. 905." Huntington v. Attrill, 146 U. S. 683, 13 Sup. Ct. 233. "The statute of another state has, of course, no extraterritorial force; but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. In such cases the law of the place where the right was acquired or the liability was incurred will govern as to the right of action, while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought; and we think the principle is the same whether the right of action be ex contractu or ex delicto." Herrick v. Railway Co., 31 Minn. 11, 16

N. W. 413, approved by the supreme court of the United States in Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978. The foregoing propositions are not exactly disputed by the learned counsel for the defendant in error, but we have thought best to state them, in order to relieve this case of some of the judicial fog which has settled on it.

The first special exception to the plaintiff's right of action is, in substance, that the laws of the republic of Mexico, as pleaded by the plaintiff, are so vague, uncertain, and dissimilar to the laws of this country, that this court should not entertain jurisdiction thereon and attempt to enforce said laws. To pass upon this exception, it is pertinent to inquire to what extent the proper understanding and construction of the laws of the republic of Mexico are material to the case made in the petition. According to the rul· declared in Herrick v. Railway Co., supra, which rule, as we have seen, was approved by the supreme court of the United States in Railroad Co. v. Babcock, supra, the law of Mexico is to be looked to, to determine whether thereunder an employé of a railroad company, injured by and through the negligence of the company, has a right to recover in a civil action damages for such injury, and, if he has, what is the extent of such right. On this inquiry, we are of opinion that the law of Mexico, instead of being vague and uncertain, is clear and specific. Article 11 of the Mexican Federal Penal Code, and articles 301, 304, 305, 306, 307, 308, and 326 of book 2 of the same Code, as pleaded, confer on any person injured by and through the negligence of another a right to recover in a civil proceeding all the actual damages sustained. Article 330 of the same Code provides that masters may be held civilly liable, through their clerks and servants, according to the provisions of articles 326 and 327, for the negligence of said clerks and servants within the scope of their employment. Article 194 of the act of congress of December 15, 1881, declares that railway companies are liable for all faults or accidents which occur through tardiness, negligence, imprudence, or want of capacity of their employés. Certainly these laws, so clearly defining negligence and the civil rights resulting therefrom, ought not to be rejected as too vague and indefinite to be administered by intelligent courts and judges.

But it is excepted that these laws are dissimilar to the laws of this country (i. e. Texas), and too dissimilar to be administered by the court. The alleged dissimilarity having such grave results is not pointed out in the exception. The brief of the learned counsel for the defendant in error is but little more specific, and that little by way of argument that the law of Mexico, as pleaded, requires a judicial determination of the infraction of the penal law of Mexico as a condition precedent to a suit for civil damages, and that such criminal proceedings have not been commenced, whereby all pending civil proceedings would be stayed, under article 26 of the transitory law of the Penal Code of Mexico; and, further, that the petition should show, but does not, that the judge who took cognizance of this suit endeavored to procure an agreement of the parties to a compro·

mise of the controversy as required by article 313 of the Mexican Code before proceeding to adjudication hereof. Article 26 of the transitory law (Penal Code) and article 313 of the Penal Code, as pleaded, relate wholly to matters of procedure, and do not affect the right, nor even the remedy. Article 327 of the Penal Code provides that the civil liability shall exist without regard to whether the defendant be absolved or condemned to criminal liability; and article 298 of the act of congress of December 15, 1881, expressly reserves the right of individuals through indemnity and the liability which the companies may have incurred through criminal acts or omissions committed by them. If, however, it should be conceded that there is dissimilarity between the law of Mexico giving the right of action and the law of Texas, in which state it is sought to enforce the right, it does not appear that such dissimilarity extends so far as to conflict with the settled public policy of the state of Texas.

"But it by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens. If the state of Iowa sees fit to impose this obligation upon those operating railroads within her bounds, and to make it a condition of the employment of those who enter their service, we see nothing in such a law repugnant either to good morals or natural justice, or prejudicial to the interests of our own citizens." Herrick v. Railway Co., 31 Minn. 11, 16 N. W. 413.

See, also, Higgins v. Railway Co., 155 Mass. 176, 29 N. E. 534.

In Huntington v. Attrill, supra, the supreme court says:

"In order to maintain an action for an injury to the person or to movable property, some courts have held that the wrong must be one which would be actionable by the law of the place where the redress is sought, as well as by the law of the place where the wrong was done. See, for example, The Halley, L. R. 2 P. C. 193, 204; Phillips v. Eyre, L. R. 6 Q. B. 28, 29; The M. Moxham, 1 Prob. Div. 107, 111; Wooden v. Railroad Co., 126 N. Y. 10, 26 N. E. 1050; Ash v. Railroad Co., 72 Md. 144, 19 Atl. 643. But such is not the law of this court. By our law a private action may be maintained in one state, if not contrary to its own policy, for such a wrong done in another and actionable there, although a like wrong would not be actionable in the state where the suit is brought. Smith v. Condry, 1 How. 28; The China, 7 Wall. 53, 64; The Scotland, 105 U. S. 24, 29; Dennick v. Railroad Co., 103 U. S. 11; Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905."

The second special exception is that the petition does not show any reason why plaintiff did not sue for damages for said injuries in the republic of Mexico, and this on the ground that the injury sustained by the plaintiff occurred in the republic of Mexico, and any right of action which he may have is controlled by the laws of said republic; and it appears that the defendant has, ever since the injury, maintained its line of railroad in said republic, and continued to possess its property in said republic. We are familiar with the exception of the pendency of another suit between the same parties

on the same cause of action in another court of the same jurisdiction, but this is our first introduction to an exception that the plaintiff cannot maintain a cause of action in a court having jurisdiction ratione personæ and ratione materiæ, because the plaintiff could have instituted his action in some other court that would have had like jurisdiction. It has been conclusively shown that although the injury for which plaintiff sues occurred in the republic of Mexico, and that his right to recover damages is controlled by the laws of said republic, yet the plaintiff has a right to sue in the circuit court. That the petition shows that the defendant owns and operates a railroad in the republic of Mexico does not appear to be a very good reason for the courts of Texas to decline jurisdiction, particularly where the same petition shows that the defendant owns and operates part of the same line of railroad in the state of Texas.

The third special exception is, in substance and effect, that a judgment in favor of plaintiff, awarding him damages for the injury sustained, would not be a final determination of the rights between the parties, but that thereafter the plaintiff, under the law of Mexico, would have the right to bring suits from time to time, and recover in said suits, if his said injury is continuing or permanent. This exception appears to be based upon article 306 of the Penal Code of Mexico, as follows:

"The condition required by the two preceding articles, that the damages and injuries should be actual, shall not prevent that the indemnization of subsequent damages and injuries be exacted by a new suit, when they shall have accrued: If they proceed directly from, and as a necessary consequence of, the same act or omission from which resulted the previous damages or injuries."

The purport of this article is that if damages accrue after the first suit, which damages proceed directly from, and as a necessary consequence of, the same negligence, such damages may be made the subject of a second suit; and the article clearly has reference only to damages which accrue after the first suit, and which were not known to exist at the time such suit was brought and determined. It was evidently intended to give a party injured through negligence full actual damages, although not known or contemplated at the time of the first suit. The adjudication under the Mexican law in the first suit is as final as to all injuries known to exist or existing at the time of the suit as is an adjudication in our courts. In this connection the following from the opinion of Chief Justice James in Railway Co. v. Jackson (Tex. Civ. App.) 32 S. W. 234, 235:

"The well-established rule of law is that we are to look to the laws of Mexico for what pertains to the rights of the parties, and to our laws and practice for what applies to the remedy. Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978; Herrick v. Railway Co., 31 Minn. 11, 16 N. W. 413; Knight v. Railroad Co., 108 Pa. St. 250. There is no fundamental difference as to the measure of damages. The actual damage the injured party has sustained and will afterwards sustain is sought to be arrived at and redressed in both jurisdictions. The end sought in both countries is compensation. The allowance of a new suit for injuries that develop later demonstrates the purpose of the Mexican law to secure to the injured party his right to complete actual damages. The case is not like those in which it appears that the foreign law limits the amount of damages recoverable to a certain sum, where it is held that the domestic court will not render judgment in excess of such sum. The

limit and standard in both countries is compensation, and the power to reduce the allowance in favor of the defendant, and the right to a new suit in favor of plaintiff, for unconsidered damages, are all merely the means of attaining and enforcing actual damages. It is observed that exemplary damages were not asked or allowed in this case. Our opinion on this branch of the case is that the difference in the mode of arriving at and administering the damages is a matter that affects the remedy only, and therefore offers no obstacle to the exercise of jurisdiction by our courts. Story, Confl. Laws, § 307d. It was proper to proceed according to our law and practice, as the court did in this instance, in ascertaining the entire damages and awarding execution,"

—Is directly in point, and we agree with the reasoning and conclusion.

The fourth special exception sustained by the court below is that the petition fails to show that the judge of the circuit court, or any judge having cognizance of the matter, had endeavored to have the amount and terms of the payments for plaintiff's injuries agreed upon between the parties as required of the judges in Mexico under article 313 of the laws of said republic. We have already held that this article relates merely to procedure, and does not affect the right, nor even the remedy. The procedure provided for in said article 313 is, as we are informed, a practice enjoined in suits on contracts as well as torts, and is derived from the civil law.

The fifth special exception is that according to the laws of Mexico, as pleaded, the plaintiff has no right to recover damages in a civil suit unless he shows that the acts of the defendant which caused the injury constituted a crime under said laws of Mexico; that the recovery in said civil suit is penal in its nature; that the circuit court cannot enforce the penal laws of the republic of Mexico, and that the laws of said republic do not sufficiently define what acts are made penal under said laws to enable the court to judge whether or not said acts by which said injury was caused are penal, within the meaning of the law, to entitle the plaintiff to any recovery in a civil action therefor. It appears from the laws pleaded that a civil action lies in the courts of Mexico for the negligent wrongs complained of, and although by the laws of Mexico the wrongful acts of the defendant, as alleged in the petition, may constitute a negligent crime, it does not appear that the liability of defendant to the plaintiff for the injuries complained of depends in any way upon the criminal prosecution or conviction of the defendant. Article 327, Mexican Code; articles 194, 298, Act. Cong. Dec. 15, 1881. And see Huntington v. Attrill, supra. The recovery sought in this case is not penal, but is for the individual benefit of the plaintiff, and inures in no way to the benefit of the public. The court is not asked in this action to enforce any penal law of the republic of Mexico, but merely to enforce the civil right of the defendant granted by the laws of Mexico, occasioned by an act of negligence such as gives a right of action under the law in any civilized country.

The sixth special exception is that, according to article 323 of the laws of the republic of Mexico, a recovery may be had not only for the damages sustained by the injuries complained of, but the judge trying the case may award as extraordinary indemnity any sum that he may determine, considering the social position, etc., of the party

injured; and the argument is that the said law is against natural justice, and that to discriminate in favor of or against a litigant according to his social position is against the policy of our law. Counsel for the plaintiff answers this exception as follows:

"There is no law requiring us to sue for extraordinary indemnity, and we have not done so; and the fact that we might have done so in the republic of Mexico is no reason why we should not sue for, in this country, such damages as are otherwise permissible. The fact that the defendant is sued in a forum where extraordinary damages cannot be recovered is a matter for which he ought to thank heaven, take courage, and say no more about it. He certainly cannot complain. Suppose the law of one country should give exemplary damages under circumstances such as that the laws of our country would not give? Could it be supposed that that was a reason for this court refusing to give such damages as are permissible under our laws? If the law of Mexico giving extraordinary indemnity considering the social position is against natural justice and the policy of our laws, that would be a good reason why the courts of this country should not give extraordinary indemnity. But certainly it is no reason why they should not give ordinary indemnity such as is consistent with natural justice and our policy."

This answer seems to dispose of the sixth exception conclusively.

The seventh special exception reiterates the charge of vagueness and indefiniteness of the Mexican law involved, and is disposed of by what has been said with regard to the first special exception.

To support the ruling of the circuit court sustaining the foregoing special exceptions, the learned counsel for the defendant in error relies solely upon a decision of the supreme court of the state of Texas in Railroad Co. v. Jackson (Tex. Sup.) 33 S. W. 857. That was a case in most respects similar to the one under present consideration; differing, however, in one or two important points, which will be hereafter noticed. The first propositions in Railroad Co. v. Jackson, supra, affecting the ruling here, are as follows:

"This is a transitory action, and may be maintained in any place where the defendant is found, if there be no reason why the court whose jurisdiction is invoked should not entertain the action. The plaintiff, however, has no legal right to have his redress in our courts; nor is it specially a question of comity between this state and the government of Mexico, but one for the courts of this state to decide, as to whether or not the law by which the right claimed must be determined is such that we can properly and intelligently administer it with due regard to the rights of the parties. Gardner v. Thomas, 14 Johns. 134; Johnson v. Dalton, 1 Cow. 543. The decisions of this court (well sustained by high authority) establish the doctrine that the courts of this state will not undertake to adjudicate rights which originated in another state or country, under statutes materially different from the law of this state, in relation to the same subject. Railway Co. v. McCormick, 71 Tex. 660, 9 S. W. 540; Railway Co. v. Richards, 68 Tex. 375, 4 S. W. 627. Many difficulties would present themselves, in an attempt to determine the meaning of the Mexican law, and to apply it in giving redress to the parties claiming rights under it. We understand the Mexican courts are not governed by precedent, and we have no access to reports of adjudicated cases of those courts, from which we could ascertain their interpretation of these laws."

It is to be noticed that the action was one in a court of the state of Texas brought by a citizen of that state against a foreign corporation, and that the suit before us is one brought in a court of the United States by a citizen of the United States against another citizen of the United States. In the Texas case the right to sue may be affected by comity. In our case the right to sue is specifically grant-

ed by the statute, and appears to be absolute. Gardner v. Thomas and Johnson v. Dalton, cited above, were cases in which one British subject sued another British subject (both sailors) in the state of New York to recover damages for assault and battery committed on board a British ship on the high seas. In Gardner v. Thomas the court admitted jurisdiction, but refused to hear the case on motives of policy. In Johnson v. Dalton the court approved Gardner v. Thomas, but concluded that, as the plaintiff left or abandoned the vessel in the port of New York, the court ought to entertain jurisdiction. These two cases are not very persuasive in determining as to the right of a citizen of Texas to sue in his own court and before his own judge. The Texas cases cited were actions for damages caused by the death of the injured party, where it was held that the courts of Texas will not entertain such actions if founded upon a law which is materially different from the law of that state. The rule declared may be correct and binding on the courts of the state of Texas, but the rule in this regard binding on the courts of the United States is to the contrary, and is found peremptorily declared in Dennick v. Railroad Co., supra. The difficulties which present themselves in determining the meaning of the Mexican law, and in applying it to give redress to the parties claiming rights under it, we have already sufficiently considered. As to the Mexican courts not being governed by precedent, and having no reports of adjudicated cases, we concur with what Chief Justice Fly so well says in Railway Co. v. Mitten (Tex. Civ. App.) 36 S. W. 282:

"Dissimilarity of the laws, however, was not the sole ground upon which the aid of our courts was denied to Jackson, but other and (to us) novel reasons were given why the right should be denied; among the number being the difficulties that would beset Texas courts in determining the meaning of Mexican laws. On this point it is said, 'We understand the Mexican courts are not governed by precedent, and we have no access to reports of adjudicated cases of those courts, from which we could ascertain their interpretation of these laws.' If it be true that the Mexicans have no precedents, and keep no record of adjudicated cases, it would seem that a Mexican court would be in no better position to follow in the track of the decisions than would an American; and while 'it is well settled that, if one state undertakes to enforce a law of another state, the interpretation of that law as fixed by the courts of the other state is to be followed,' still it does not follow that where the other state has not interpreted its laws, or has failed to record its interpretations, this state should therefore refuse to extend a remedy for a wrong inflicted on a citizen within the borders of such foreign state. In many of the cases in which jurisdiction has been assumed or held to attach in the courts of one state when the wrong was perpetrated in another, the offending party had removed from the latter state, but we have found no case where the fact of removal was made the ground for assuming jurisdiction. Our courts either have jurisdiction of the class of cases we are discussing, or they have not; and the question of whether a man has voluntarily resorted to our courts, or been forced into them, or whether commerce between Mexico and Texas will be injured or protected by compelling the payment by a corporation of damages for the wrongs it has inflicted, or the condition of our dockets, can have no weight or force in determining jurisdiction. These are considerations that might possibly address themselves to the notice of legislatures, but not to the determinations of courts. Courts are not at liberty to assume or decline jurisdiction upon speculative grounds, or for reasons of public policy. Percival v. Hickey, 18 Johns. 257. We are not willing to subscribe to the doctrine that a citizen of Texas who has suffered wrongs, transitory in their nature, in a foreign country, at the hands of one who has his legal domicile in this state, before he can obtain

redress at the hands of our courts must show that he has been refused aid in the foreign courts, and make it appear that he comes to the courts of his own country unwillingly, and as a last resort.   Jurisdiction of a cause should not be made to depend upon any such state of circumstances.   If the construction placed upon the decision in the Jackson Case be the true one,—and some of its expressions would seem to justify the construction,—it is a practical denial of remedies for wrongs that may be inflicted by one of our citizens upon another in Mexico by relegating him to a trial in the courts of a country where 'the laws are said to be enforced without precedent or authority, and which laws are claimed to be so uncertain and obscure that our courts cannot undertake to construe them.   We are not willing to subscribe to such doctrine, and will not extend the scope of the decision referred to beyond the purview of the facts of that case.   We hold that the petition showed a cause of action, and that the district court of El Paso county had jurisdiction of the case."

Following the above-quoted propositions, the supreme court in the case cited elaborates in regard to the dissimilarity between Mexican law and the law of 'Texas, and holds that this dissimilarity is sufficient to warrant the courts of Texas in refusing to entertain jurisdiction.   The court next finds that another reason for refusing to entertain jurisdiction exists in the fact that the Mexican National Railroad owns and operates a railroad in Mexico; and as a matter of comity to the people of Mexico, and as a matter of policy towards the growing commerce between Texas and Mexico, and out of consideration for the overburdened condition of the dockets of the Texas courts, the court holds the Texas courts ought not to entertain suits for negligence brought against railroad companies operating lines in Mexico, where the plaintiff chooses the Texas jurisdiction from convenience, and not from necessity.   The petition in the case at bar shows a fact not appearing in the Jackson Case, i. e. that the Mexican National Railroad extends into and is operated in the state of Texas; and that being the case, and as the plaintiff has a right to sue in the circuit court, we doubt if the locality of the defendant's railroad, given as sufficient for nonsuiting Jackson in the courts of the state of Texas, is sufficient to nonsuit the present plaintiff in the circuit courts of the United States sitting in Texas.   The question of international comity is controlled and decided by international law and custom, and the decisions of local courts are not controlling in the courts of the United States.   Huntington v. Attrill, supra; Greaves v. Neal, 57 Fed. 816.   Clearly the opinion and decision of the supreme court of the state of Texas ought not to, and does not, control in the proper decision of the questions here involved.   Our lengthy discussion of the case comes from our high appreciation of the acknowledged ability of the judges of that court, and in deference to our learned brother of the circuit court, who appears to have followed the same.

Having considered the important questions presented in this case in the light of the numerous authorities cited by counsel, and many others within our reach, we conclude that neither in reason nor on authority are the special exceptions to the amended original petition well founded.   The judgment of the circuit court is reversed and the case remanded, with instructions to overrule the special exceptions, and thereafter proceed in the trial and determination of the case according to law.