Manuel SCHYDLOWER, M.D., Individually, and on behalf of all others similarly situated, Plaintiff,

v.

PAN AMERICAN LIFE INSURANCE COMPANY, Defendant.

No. EP–04–CA–441–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Sept. 27, 2005.

Leon Schydlower, Thomas A. Spieczny, Attorney at Law, El Paso, TX, for Plaintiff.

Reagan M. Brown, Fulbright & Jaworski, Houston, TX, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

BRIONES, District Judge.

On this day, the Court considered Defendant Pan American Life Insurance Company's ("Pan Am") "Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(1)" ("Motion to Dismiss for Lack of Subject Matter Jurisdiction"), filed in the above-captioned cause on February 10, 2005. On February 23, 2005, Plaintiff Manuel Schydlower filed a "Brief In Opposition To Defendant's Rule 12(b)(1) Motion" ("Response"). On March 7, 2005, Defendant filed a "Reply To Plaintiff's Response To Defendant's Motion To Dismiss For Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(1)."

On this day, the Court also considered Defendant Pan Am's "Motion To Dismiss Plaintiff's Complaint Pursuant To Fed. R.Civ.P. 12(b)(6)" ("Motion to Dismiss for Failure to State a Claim"), filed in the above-captioned cause on January 31, 2005. On February 11, 2005, Plaintiff filed a "Brief In Opposition To Defendant's Rule 12(b)(6) Motion" ("Response"). On February 25, 2005, Defendant filed a "Reply To Plaintiff's Response To Defendant's Motion To Dismiss For Plaintiff's Complaint Pursuant To Fed. R.Civ.P. 12(b)(6)." On March 14, 2005, Pan Am filed a "Sur-reply [*sic*] To Plaintiff's Response To Defendant's Motion To Dismiss For Plaintiff's Complaint Pursuant To Fed. R.Civ.P. 12(b)(6)." After due consideration, the Court is of the opinion that both of Pan Am's Motions to Dismiss should be denied. The Court concludes that Plaintiff has standing, that the instant suit is not preempted by the International Claims Settlement Act,

Claims Against Cuba or China, 22 U.S.C. § 1643, *et seq.* (West 2004), that the Texas statute of limitations applies, and that Plaintiff has pled fraud with sufficient particularity, such that the Texas statute of limitations does not bar Plaintiff's claims.

## BACKGROUND

Since the Court presently considers Pan Am's Motions to Dismiss, it takes the factual allegations of Plaintiff's amended complaint as true and resolves any ambiguities or doubts regarding the sufficiency of the claim in favor of Plaintiff. *See Fernandez–Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir.1993) (considering a motion to dismiss for failure to state a claim, the court applied this standard); *see also Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001) (accepting all factual allegations in the plaintiff's complaint as true where it considered a motion to dismiss for lack of subject matter jurisdiction).

This is a case of alleged corporate fraud. Pan Am is a Louisiana insurance and finance company, with its principal place of business in New Orleans, Louisiana. Pan Am began operating in Cuba in 1913. Plaintiff was born on November 1, 1942, in Chicago, Illinois, to Leibush Shydlower Perelmuter ("Leibush") and Anna Szydlower ("Anna"). As an infant, Plaintiff's parents took him to Cuba where they raised him. While residing in Cuba, Leibush, Plaintiff's father, purchased a life insurance policy, number 435–381, from Pan Am in the late 1940's or early 1950's. On the night of December 31, 1958, Fidel Castro's revolutionary army overthrew Fulgencio Batista's government. Leibush's policy matured on June 1, 1959.

In the summer of 1959, Castro's government began seizing money and private property. On July 7, 1959, Leibush contracted with Pan–Am to leave the value of the mature policy in Pan Am's possession. Leibush and Pan Am entered into an Agreement of Settlement ("Agreement") which provided that the life insurance policy's proceeds or any portion could be withdrawn by Leibush at any date. The Agreement further established Anna as the Agreement's primary beneficiary, and Plaintiff as the Agreement's secondary beneficiary.

In a Financial Statement for its Cuban branch issued December 31, 1959, Pan Am declared that as "an International organization, it is the practice of [Pan Am] to centralize its available assets, so that, besides maintaining assets to cover specific and technical reserves, the risks insured anywhere in the world are guaranteed additionally by the general assets of the Company."

On September 21, 1961, Plaintiff left Cuba and began residing in Champaign, Illinois. By letter dated December 30, 1961, as Leibush's agent, Plaintiff attempted to redeem the Agreement's proceeds from Pan Am at its New Orleans headquarters. By letter dated January 5, 1962, Pan Am counsel responded to Plaintiff's demand as follows:

"Your letter of December 30, 1961 in connection with the above mentioned policy has been referred to the Legal Department of the Company for reply."

"We regret to inform you that the Cuban Government seized our Cuban assets and liabilities, included in which is the reserve existing on policy No. 435–381 which was invested in Cuba by this Company. This action took place on October 6, 1960. Under these circumstances, the administration of your father's policy and the liability thereunder will be handled by the Pan–American Life Insurance Company Nacionalizada, which under Cuban law is being administered by the Social Security Bank through their appointed administrator, Mr. Armando G. Olivera. Their last address available to us is Pan–American Life Insurance Company Nacionalizada, Oficina de Control de Seguros de Vida, Apartado 6607, La Habana, Cuba. Any inquires relative to the policy in question should be addressed to them."

"You may be assured that we regret being placed in this position. We would much prefer to have continued the normal operation of our business, but we have no control over the actions of the Cuban Government."

Leibush died on September 1, 1966. Anna joined Plaintiff in the United States in June 1968. As the Agreement's primary benefi-

ciary upon Leibush's death, Anna directed Plaintiff as her agent to renew the family's demand. By letter dated October 15, 1969, Plaintiff, on behalf of Anna, tried to claim the money Leibush had left with Pan Am. Pan Am responded by letter dated November 10, 1969 which stated:

"Your letter of October 15 addressed to the president of our company has been referred to me for reply."

"As we previously advised you in 1962, copy of which letter is enclosed, the Cuban government substituted itself in place of this company on all contracts issued through our former Cuban Branch Office to Cuban nationals. As we advised you, any inquiries should be made to the Cuban government."

"By decree law 1193 issued in July, 1966, the Cuban government called in all of these policies for final settlement."

On October 15, 1969, John K. Roberts ("Roberts"), then Pan Am's Second Vice President and Director of the Actuarial Department, executed an affidavit intended to supplement Pan Am's claim to the Foreign Claims Settlement Commission ("FCSC").[1] In that affidavit, Roberts represented to the FCSC that "the United States Federal Courts have held [Pan Am] liable on certain policies, the reserves of which were held in Cuba." Roberts indicated that through September of 1969, Pan Am had paid $683,593 on one hundred seventeen (117) of its Cuban policies. Further, Roberts informed the FCSC that the value of Cuban policies not yet paid or settled was $6,560,212.39, as of October 1969.

Plaintiff filed the instant cause of action on November 24, 2004. Plaintiff amended his complaint on December 1, 2004. Therein, Plaintiff alleges breach of contract, fraud, and misrepresentation claims, for himself and as a putative class action. Plaintiff seeks a declaratory judgment, actual and special damages, as well as exemplary damages. The instant Motions to Dismiss followed.

## DISCUSSION

Presently before the Court are Pan Am's Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and Pan Am's Motion to Dismiss for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Motion to Dismiss for Lack of Subject Matter Jurisdiction attacks the Court's ability to make any determinations on the merits, the Court addresses it, before turning to Pan Am's Motion to Dismiss for Failure to State a Claim. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir.2001) (holding that when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits).

## I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction, Pan Am prays the Court dismiss the instant cause on the grounds that Plaintiff lacks standing to assert a claim against Pan Am on the Agreement, or, alternatively, because Plaintiff's claims are preempted by the FCSC's authority to determine the validity and amount of U.S.'s nationals claims against Cuba. The Court discusses Plaintiff's standing, before considering the issue of preemption.

### A. Standing

■ Through his Amended Complaint, Plaintiff seeks to recover the proceeds of the Agreement that Leibush and Pan Am entered into on July 7, 1959. In order to have standing, Plaintiff must demonstrate: (1) an injury in fact; (2) that is traceable to Pan Am's challenged conduct; and (3) which is likely to be redressed by a favorable decision by the Court. *See McCall v. Dretke*, 390 F.3d 358, 361–62 (5th Cir.2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560,

---

1. Congress established the FCSC in 1954. *See* 22 U.S.C.A. § 1622(c) (West 2004). In 1964, by amendment to the International Claims Settlement Act, Congress charged the FCSC with determining the amount and validity of claims against the Cuban government arising from "nationalization, expropriation, intervention, or other takings of, or special measures directed against, property of nationals of the United States." *Id.* at § 1643.

112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). Plaintiff must have suffered a personal injury that is distinct and palpable and not conjectural, abstract, or hypothetical. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The standing doctrine embraces several judicially imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324.

■ Pan Am challenges Plaintiff's standing on the ground that Plaintiff has suffered no personal injury at Pan Am's hands. Pan Am argues that Plaintiff's right to the proceeds under the Agreement were contingent until Leibush and Anna's deaths. Moreover, Pan Am insists that Plaintiff's rights never vested because the Cuban government "called in all insurance contracts for final settlement, two months before [Leibush] died." In essence, Pan Am asserts that Plaintiff lacks standing to maintain his claims because the Cuban government's actions expropriated Leibush's rights before they could pass to Plaintiff. For his part, through his Response, Plaintiff retorts that the Fifth Circuit squarely rejects the notion that a foreign government can expropriate an individual's right to enforce an agreement. *See Oliva v. Pan Am. Life Ins. Co.,* 448 F.2d 217, 220 (5th Cir.1971); *see also Pan–American Life Ins. Co. v. Blanco,* 362 F.2d 167, 170 (5th Cir. 1966). Pan Am replies that because the Agreement between it and Leibush is not a U.S. contract, Cuba expropriated Leibush's right to recover. The Court agrees with Plaintiff that Cuba's expropriation does not absolve Pan Am of its obligations under the Agreement.

In *Oliva,* the Fifth Circuit explained that property rights which exist outside of Cuba could probably not be expropriated. *Oliva,* 448 F.2d at 220 (citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 413, 84 S.Ct. 923, 932, 11 L.Ed.2d 804 (1964)). The *Oliva* plaintiff, a Cuban citizen, sought to recover on life and fire insurance policies against which the Cuban government had issued confiscation decrees. *Id.* at 218–20. The *Oliva* court concluded that because the case dealt with plaintiff's contractual rights,

as opposed to tangible property in Cuba, the Cuban government did not expropriate the plaintiff's rights.

In the case at bar, Pan Am argues that Cuba's calling in all insurance contracts for final settlement deprived Leibush of any rights under the Agreement, and that as a result, Plaintiff could not have inherited any claim under the Agreement. Moreover, Pan Am urges the Court that the Agreement is distinguishable from the policy in *Oliva,* because the Agreement is only payable in Cuba, in Cuban currency. However, the *Oliva* court did not base its decision on the currency or place where that policy was payable. *See id.* Rather, the *Oliva* court's ruling rested on the fact that the case dealt with a seizure of contractual rights, and not a seizure of tangible property. *Id.* Indeed, as regarded the plaintiff's claim on his fire insurance policy, the *Oliva* court did not even provide details surrounding the currency or place in which that policy was payable. *Id.* Because the case at bar also deals with contractual rights, the Court follows *Oliva,* and finds that Cuba did not expropriate Leibush's contractual rights. By the terms of the Agreement, then, upon Leibush's death, Leibush's rights passed to Anna, and, upon her death, any rights under the Agreement passed to Plaintiff. Thus, the Court concludes that Plaintiff has rights to assert, and that Pan Am's instant Motion fails.

## B. Preemption

Through the Motion to Dismiss for Lack of Subject Matter Jurisdiction, Pan Am alternatively asserts that even if Plaintiff has standing to sue under the Agreement, his claims are preempted by the FCSC's authority over U.S. nationals' claims against the Cuban government. Pan Am rests its argument for preemption on the Supreme Court's ruling in *American Insurance Assoc. v. Garamendi,* 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376. In *Garamendi,* the Supreme Court preempted a California statute which required insurance companies doing business in California to disclose information about all policies sold in Europe, between 1920 and 1945, by the company itself, or any one related to it, because the statute interfered with

the national government's conduct of foreign relations. *See Garamendi*, 539 U.S. at 401, 123 S.Ct. at 2379. Pan Am maintains that Plaintiff's lawsuit should be preempted because it interferes with the process and purpose of the FCSC. Through his Response, Plaintiff argues that no grounds exist for preemption here, because the national government has not established a policy regarding claims against the Cuban government. The Court concludes that preemption is unwarranted, because the instant case is distinct from *Garamendi*.

■ While Pan Am reads and cites *Garamendi* for the proposition that foreign policy can preempt an individual's lawsuit, the Court disagrees. The Court understands *Garamendi* to deal with a state's ability to pass a law which specifically circumvents federal foreign policy by creating a state cause of action which provides relief for its citizens. *See id.* at 408–09, 123 S.Ct. 2374. Here, the Court deals with an individual's lawsuit and not a state's creation of a new cause of action. Further, the Court is unconvinced that Congress intended that all claims against American corporations should be handled by the FCSC. Congress provided that a U.S. national's claims against an American corporation could be assessed by the FCSC, when the company's obligation to the individual "is a charge on property which has been nationalized, expropriated, intervened or taken by the Government." 22 U.S.C.A. § 1643d(a). In the instant case, as discussed above, any obligation Pan Am owes Plaintiff stems from the Agreement. Pan Am's obligation is not a "charge" on property which was nationalized. Thus, the Court concludes that Congress did not intend for the FCSC to assess claims like Plaintiff's. Under these circumstances, the Court finds *Garamendi's* ruling inapplicable, and concludes that Plaintiff's claims are not preempted.

Having determined that the Court possess subject matter jurisdiction over Plaintiff's claims, the Court addresses Pan Am's Motion to Dismiss for Failure to State a Claim

## II. Motion to Dismiss for Failure to State a Claim

■ Rule 12(b)(6) allows dismissal of a case when the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under Rule 12(b)(6), a court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Dismissal for failure to state a claim is highly disfavored and is not granted routinely because of the liberal "notice pleading" requirements of the Federal Rules. FED. R. CIV. P. 8(a); *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir.2000). In short, a court should not dismiss a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102.

When considering a motion under Rule 12(b)(6), the court must limit its inquiry to facts stated in the plaintiff's complaint and the documents either attached to or incorporated therein. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Further, the court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them, *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), and must review those facts in a light most favorable to the plaintiff. *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995).

Through its instant Motion to Dismiss for Failure to State a Claim, Pan Am prays the Court dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the theory that the Texas statute of limitations applies to the case at bar, and bars Plaintiff's claims. *See Jones v. Alcoa*, 339 F.3d 359, 366–68 (5th Cir.2003) (holding that it is appropriate for a court to dismiss under Rule 12(b)(6) when a statute of limitations has run). Pan Am further argues that Plaintiff has failed to adequately plead fraudulent concealment as grounds to toll the statute of limitations. Plaintiff disputes that the Texas statute of limitations applies, and, alternatively, main-

tains that if the Texas statute of limitation applies, he has plead fraud with sufficient particularity, such that Pan Am cannot raise the specter of limitations as a defense. Ultimately, the Court concludes that the Texas statute of limitations applies, that Plaintiff has pled fraud with sufficient particularity, and, that as such, Plaintiff's claims are not barred by the Texas statute of limitation. The Court begins by determining the applicable statutes of limitations.

■ In a diversity action, a federal court must apply the choice of law rules of the state in which it sits. *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 383 n. 1 (5th Cir.2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Here, because the Court exercises diversity jurisdiction over the instant cause, it applies Texas's choice of law rules to determine which state's statute of limitations applies. Pursuant to Texas's choice of law rules, questions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained. *Hill v. Perel*, 923 S.W.2d 636, 639 (Tex.App.1995) (citing *State of California v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 230 (1958)). Further, the statute of limitations is a procedural issue. *Id.* While the substantive law which applies to the instant cause of action will be determined by applying the most significant relationship test, *see Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex.2000), the Texas statute of limitations applies simply because Plaintiff has brought this action within Texas. *See Hill v. Perel*, 923 S.W.2d at 639. Having determined that Texas statutes of limitations apply to the instant cause of action, the Court turns to Defendants assertion that the applicable statutes of limitations bar Plaintiffs claims.

Through its instant Motion, Pan Am asserts that the statute of limitations began running on Plaintiff's claims when Pan Am rejected Plaintiffs first demand for the proceeds under the Agreement by letter dated January 2, 1962, and maintains that Plaintiff "missed his filing deadline by at least 31 years." Through his Response, Plaintiff contends that his amended complaint pleads fraud with sufficient necessity to equitably estop Pan Am from asserting limitations as a bar to Plaintiff's claim. The Court agrees that Plaintiff has plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b), and that Pan Am is estopped from invoking limitations to protect it from Plaintiff's claims.

■ Rule 9(b) requires the plaintiff to particularly allege the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994). Although scienter "may be averred generally," *see* FED. R. CIV. P. 9(b), case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. *See Tuchman*, 14 F.3d at 1068. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud. *Id.* The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit fraud. *See id.*

■ Here, Defendant generally asserts that Plaintiff's allegations do not comply with Rule 9(b), referring only to paragraphs 69 and 70 of Plaintiff's amended complaint. While paragraphs 69 and 70 address fraud in a conclusory manner, within his amended complaint, Plaintiff avers that Pan Am, through its December 31, 1959 Financial statement, represented to Leibush that money he left with them would be guaranteed by the general assets of the company, and that Pan Am twice rejected Plaintiff's demands for the Agreement's proceeds, in 1962 claiming that the Cuban government's nationalization of Pan Am's office absolved Pan Am of any obligation to Leibush, Anna, or Plaintiff, and in 1969, when Pan Am directed Plaintiff that his inquiries should be made to the Cuban government. These averments, along with the exhibits attached to and reference in the amended complaint, specifically provide the date, place, and substance of the allegedly fraudulent statements, as well as the iden-

**500**

tity of the individuals who made the statements. In addition, by alleging that Pan Am represented to the FCSC that it was aware that courts were holding Pan Am liable on policies similar to Plaintiff's, Plaintiff sufficiently avers Pan Am's motive and knowledge of the fraud. Thus, Plaintiff has also adequately plead Pan Am's scienter. The Court finds that Plaintiff has fulfilled Rule 9(b)'s pleading requirements.

 Lastly, Pan Am maintains that even if Plaintiff plead fraud with the requisite specificity, there exist no grounds for tolling the statute of limitations. Essentially, Pan Am argues that Plaintiff knew or should have known of the facts which gave rise to his cause of action. Pan Am's argument, however, misses the mark. A party estops himself from asserting limitations where he misrepresents facts, and the other party reasonably relies on the untrue representations in postponing legal action until after the limitation period expires. *Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 632 (5th Cir.1985) (applying Texas law). Here, taking Plaintiff's well-plead allegations as true, Pan Am instructed Plaintiff that it was absolved of any obligation to Plaintiff, and that any questions he had should be directed to the Cuban government, while representing to the FCSC that courts had held Pan Am liable on similar clams, establishing that Pan Am misrepresented its obligations to Plaintiff. Additionally, Plaintiff's averments regarding its claim to the FCSC substantiates that Plaintiff relied on Pan Am's untrue representations. While determining whether or not Plaintiff can prove equitable estoppel is a jury question, *id.*, Plaintiff has provided the Court with sufficient facts that dismissing Plaintiff's claims for failure to state a claim is inappropriate.

### CONCLUSION

For the reasons stated, the Court finds that it possess subject matter jurisdiction, as Plaintiff has standing, and his claims are not preempted. Further, as discussed above, the Court concludes that the Texas statute of limitations applies to the case at bar, that Plaintiff has pled fraud with sufficient partic-

ularity, such that Pan Am cannot raise the specter of limitations as a defense.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Pan American Life Insurance Company's "Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(1)" is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Pan American Life Insurance Company's "Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(6)" is **DENIED**.